Filed: July 24, 1998

IN THE SUPREME COURT OF THE STATE OF OREGON

In the Matter of the Application of

DANIEL ALAN BERNATH,

For Admission to the Oregon State Bar.

(SC S44863)

 On review of the recommendation of the Oregon State Board of

Bar Examiners.

 Submitted on the record and briefs April 24, 1998.

 Daniel A. Bernath filed petitioner's briefs pro se.

 Jeffrey D. Sapiro, Oregon State Bar, Lake Oswego, filed the

brief on behalf of the Oregon State Board of Bar Examiners.

 Before Carson, Chief Justice, and Gillette, Van Hoomissen,

Durham, Kulongoski, and Leeson, Justices.

 PER CURIAM

 Admission denied.

 PER CURIAM

 The issue in this case is whether Daniel A. Bernath

(applicant) has proved by clear and convincing evidence that he

"is a person of good moral character and fit to practice law" in

this state. ORS 9.220(2)(a).(1) After de novo review of the

record developed before the Board of Bar Examiners (Board), ORS

9.536(3) and 9.539, Rules for Admission of Attorneys (RFA)

9.60(5), and Bar Rule of Procedure (BR) 10.6, we conclude that

applicant has not proved that he possesses the requisite good

moral character and fitness to practice law in this state. 

Accordingly, we deny applicant admission to the practice of law

in the State of Oregon.

 Applicant was admitted to the practice of law in

California in 1984 and practiced in that state until 1994, at

which time he moved to Oregon. In October 1994, applicant

applied for admission to the Oregon State Bar. Applicant took

and passed the February 1995 Oregon State Bar examination. 

However, following a character and fitness review proceeding, a

three-member panel of the Board recommended that applicant be

denied admission to the practice of law in Oregon. Thereafter,

the full Board unanimously made the same recommendation to this

court, forwarding that recommendation to the court on December

24, 1997. Applicant timely filed a petition for review of the

Board's recommendation. This court has jurisdiction pursuant to

ORS 9.539 and BR 10.2.

 Applicant must prove by clear and convincing evidence

that he has the requisite good moral character to be admitted to

the practice of law in Oregon. RFA 9.45(6); In re Rowell, 305 Or

584, 588, 754 P2d 905 (1988). That means that applicant must

show that it is "highly probable" that he has good moral

character. In re Monaco, 317 Or 366, 370 n 4, 856 P2d 311

(1993). Any significant doubts about applicant's character are

resolved in favor of protecting the public by denying him

admission. In re Jaffee, 319 Or 172, 177, 874 P2d 1299 (1994);

In re Easton, 298 Or 365, 367-68, 692 P2d 592 (1984).

 In its recommendation to this court, the Board

identified the following findings of the three-member panel that

the full Board believed demonstrated applicant's lack of good

moral character and fitness to practice law in Oregon: 

 "(A) He disobeyed a court order to pay child

support.

 "(B) He was suspended for over a year in the State

of California for failure to pay child support.

 "(C) He failed to inform the Board that he was

suspended from the practice of law in the State of

California and he lied to the Board about his

suspension in California, stating that he was not

suspended when he was in fact suspended.

 "(D) He loaned money to a client, Tamara Varner

('Varner'), and collected on the loan from settlement

proceeds from Varner's lawsuit without Varner's

knowledge or agreement.

 "(E) He signed Varner's name to a release without

Varner's knowledge and without advising the opposing

party or counsel for the opposing party that he was

signing the release on behalf of Varner. On that same

release he signed as a witness, attesting to the

authenticity of Varner's signature.

 "(F) He lied by omission to the Board when he told

it that he did not notarize the Varner settlement

document.

 "(G) He endorsed Varner's name to the settlement

check without Varner's knowledge and without advising

the bank that he was doing so.

 "(H) He retained all of the proceeds of the

settlement without Varner's knowledge or agreement.

 "(I) He failed to respond to a notice from the

Committee on Arbitration of the Los Angeles County Bar

Association that Varner was disputing his fee and that

there would be an arbitration of the dispute. He also

failed to appear at the hearing.

 "(J) He failed to advise the Board of the fee

dispute or the award in favor of Varner and against him

in the amount of $10,000.

 "(K) He wrote a letter to Varner after entry of

the award against him wherein he misrepresented the law

and threatened to sue her if she did not agree to

settle with him for $500. 

 "(L) He destroyed all of his files for all of the

cases he handled in California.

 "(M) A judgment was entered in California against

him in the amount of $34,000 for malicious prosecution.

 "(N) He lied by omission to the Board when in his

application for admission he stated that the judgment

for malicious prosecution was reversed, but did not

state that it was reversed by stipulation of the

parties rather than on the merits.

 "(O) He failed to inform the Board about a lawsuit

to which he was a party and which settled in

applicant's favor for the amount of approximately

$41,000.00.

 "(P) On May 16, 1997, he issued subpoenas on which

he holds himself out to be an attorney practicing in

Oregon.

 "(Q) Applicant failed to inform the Board about a

lawsuit in which applicant was a plaintiff in an

attorney fee dispute.

 "(R) Applicant failed to inform the Board that a

motion for sanctions was made against him for appearing

at a deposition while carrying a concealed weapon and

that a sanction was assessed against him in the amount

of $750."

 We need not address each of those specific allegations. 

As we explain below, we find that applicant failed to disclose to

the Board his suspension by the California State Bar, and he made

false representations to the Board regarding the Varner

settlement agreement. Each of these acts, standing alone, would

be a sufficient ground for denying his application to practice

law in Oregon. Any further discussion of the remaining

allegations against applicant would not benefit bench or bar.

 We first discuss applicant's failure to disclose his

suspension by the California State Bar. The status of an

applicant's bar membership in another jurisdiction is material

information required by the Board in making an evaluation of that

applicant's character and fitness to practice law in Oregon. 

That information, along with a certificate of good standing, is

required in the original application for admission to practice

law. RFA 4.15(3).

 Applicant was an active member of the California State

Bar when he filed his application to practice law in Oregon. At

some point after making his application, applicant voluntarily

transferred to inactive status in California. On July 31, 1995,

after that voluntary transfer to inactive status, applicant was

suspended by the California State Bar for failing to pay child

support. Applicant failed to disclose his suspension to the

Board; the Board discovered it during its investigation of

applicant's character and fitness. Applicant repeatedly denied

that his California Bar status had changed until the Board

produced documents demonstrating that the California State Bar

had suspended him for failure to obey a court order to pay child

support.

 It is essential that every applicant to practice law in

Oregon fully disclose to the Board all information relevant to

the applicant's character and fitness. Failure to disclose

relevant information fully and candidly is a ground for the Board

to recommend denial of admission. RFA 6.05(3). It also forms a

basis for this court to deny admission. In re Parker, 314 Or

143, 154-55, 838 P2d 54 (1992). Applicant was on notice of his

obligation to disclose relevant information to the Board, both

through the Rules for Admission of Attorneys and through the

application itself, on which applicant acknowledged, by signature

and under oath, his duty to disclose. Applicant's disclosure

fell short of the degree of disclosure that he acknowledged to be

required of him. Because it raises significant doubts about his

good moral character, applicant's failure to disclose his

suspension by the California State Bar constitutes a sufficient

ground for denial of his application to practice law in Oregon. 

In re Monaco, 317 Or at 369-71; In re Parker, 314 Or at 154-55.

 We turn to applicant's representation of Tamara Varner. 

Applicant represented Varner in a variety of legal matters while

he was an active member of the California State Bar. The last

matter in which he represented her was a personal injury auto

accident case in which Varner was the plaintiff.

 The attorney-client relationship between applicant and

Varner was governed by a written fee agreement. Applicant

destroyed the Varner fee agreement before he moved to Oregon.

During the Board's character and fitness investigation, applicant

produced a blank, computer-generated agreement that he claimed

was identical to the agreement that Varner signed. That blank

agreement included a power of attorney provision. Varner

disputes applicant's assertion that the agreement that she signed

contained a power of attorney provision. Varner further asserts

that, if the agreement that she signed did include a power of

attorney provision, applicant explained neither the meaning nor

the effect of that provision to her.

 The defendant's insurance carrier in Varner's auto

accident case agreed to a settlement in the amount of $10,000. A

release agreement was part of that settlement. The terms of that

release agreement required Varner to acknowledge that she had

"completely read" and "fully understood" it. By its terms, the

release agreement also expressly stated that the release was

essential and material to the settlement and that the settlement

would not have been entered into by the defendant's insurance

carrier without the release. Claiming that he acted on the

authority of the power of attorney provision that he asserts was

in the Varner fee agreement, applicant acknowledged that he

signed Varner's name on the release agreement. Applicant also

endorsed Varner's name on the settlement check. Applicant made

no disclosure or indication, either on the release documents or

orally, that he was signing the release on Varner's behalf. In

addition, applicant signed his own name on the release attesting

that he witnessed Varner sign that document.(2) 

 By signing the release agreement and the settlement

check, applicant falsely represented to the defendant, the

defendant's counsel, the defendant's insurance carrier, and the

bank that negotiated the settlement check that Varner personally

approved the settlement, endorsed the check, and released the

defendant from all claims. Applicant's willingness to make such

false representations demonstrates a lack of good moral

character. See, e.g., In re Magar, 312 Or 139, 141, 817 P2d 289

(1991) (lawyer's unauthorized endorsement of client's name on

draft made out to client constituted behavior involving

dishonesty, deceit, or misrepresentation); see also In re Boothe,

303 Or 643, 651-52, 740 P2d 785 (1987) (lawyer's endorsement of

client's name, without authorization, on a check on which lawyer

and client were joint payees, constituted conduct involving

dishonesty, deceit, or misrepresentation); In re Sassor, 299 Or

570, 576, 704 P2d 506 (1985) (lawyer's endorsement, without

authorization, of payee's signature on a state property tax

refund check and deposit of those funds in lawyer's trust account

constituted conduct involving dishonesty, deceit, or

misrepresentation). Applicant's testimony before the Board

provided no convincing explanations for his misrepresentations in

the course of the Varner litigation, and does nothing to resolve

our significant doubts regarding applicant's moral character. 

Those doubts constitute sufficient grounds for denial of his

application to practice law in Oregon. In re Monaco, 317 Or at

369-71; In re Parker, 314 Or at 154-55. See also In re Cheek,

246 Or 433, 425 P2d 763 (1967) (applicant who signed name of

company president to two checks and lied about damages to a

company automobile denied admission).

 In a bar admission proceeding, this court's primary

responsibility is to the public. Our charge is to assure that

those who are admitted to the bar possess the ethical

responsibility and the maturity of character necessary to enable

them to withstand the many pressures and temptations that will

confront them in the practice of law. The record contains

overwhelming evidence that applicant does not possess that

requisite good moral character and fitness to be a practicing

attorney in Oregon. Applicant's brief to this court does little

to resolve the doubts raised by the Board about his character. 

We conclude that applicant has failed to prove by clear and

convincing evidence that he is a person of good moral character

and fit to practice law in Oregon.

 Admission denied.

1. ORS 9.220 provides in part:

 "An applicant for admission as attorney must apply

to the Supreme Court and show that the applicant:

 "* * * * *

 "(2)(a) Is a person of good moral character and

fit to practice law."

Return to previous location.

2. The record also reveals that applicant repeatedly

attempted to mislead the Board regarding the Varner settlement

release agreement. He failed to produce the release agreement,

despite repeated inquiries about it by the Board and his

knowledge that the Board deemed the agreement to be critical to

the evaluation of his character and fitness. At one point, he

denied that there was a release agreement. He later suggested

that he already had provided the release agreement to the Board

when, in fact, he had not done so. He stated unequivocally that

he had not notarized the release, without disclosing that he had

attested to witnessing Varner's signature on the release, an act

functionally equivalent to notarization.

Return to previous location.